# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

DR. KARL ARRIOLA,

       Plaintiff,

v.                                   Case No. 2:18-CV-00036-WED

CARDINAL STRITCH UNIVERSITY, INC.,

       Defendant.

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

Pursuant to Fed. R. Civ. P. 56 and Civil L. R. 56, Dr. Arriola submits the following reply to Cardinal Stritch University's ("CSU") Response to Plaintiff's Proposed Findings of Fact.

2.       In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23, KA022825).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD. (See ECF Nos. 28, 29, 29-2.)  Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11- cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements

made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted. Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

**REPLY:** In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly

after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked

behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-

856, KA023469). The events involving Drs. Anderson and Moore increased Dr.

Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a,

KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96,

KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic

Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway

Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field

Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive

experience and professional training in PTSD from his 8 years as a United States Federal

Air Marshal Flight Medic & National Registered Emergency Medical Technician,

Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field

Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has

extensive experience and professional training in PTSD from his 11 years as a Red Cross,

National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's

Master of Science in General Psychology coursework he is educated in critical incidents

involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he

is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's

handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper

of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a

Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's

handling of critical incidents while in the Federal Air Marshal Service, resulted in the

2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

3.     From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted.  Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

**REPLY:**     In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-

Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-856, KA023469). The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a, KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96, KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive

experience and professional training in PTSD from his 8 years as a United States Federal Air Marshal Flight Medic & National Registered Emergency Medical Technician, Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has extensive experience and professional training in PTSD from his 11 years as a Red Cross, National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's Master of Science in General Psychology coursework he is educated in critical incidents involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's handling of critical incidents while in the Federal Air Marshal Service, resulted in the 2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

10.    Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any

psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted. Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

> **REPLY:** In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).
>
> On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip

Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-856, KA023469). The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a, KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96, KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive experience and professional training in PTSD from his 8 years as a United States Federal Air Marshal Flight Medic & National Registered Emergency Medical Technician, Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has extensive experience and professional training in PTSD from his 11 years as a Red Cross, National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's Master of Science in General Psychology coursework he is educated in critical incidents involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's

handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's handling of critical incidents while in the Federal Air Marshal Service, resulted in the 2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

11.     Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted.  Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018)

(describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

**REPLY:**     In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-856, KA023469). The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a, KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96, KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive experience and professional training in PTSD from his 8 years as a United States Federal Air Marshal Flight Medic & National Registered Emergency Medical Technician, Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has extensive experience and professional training in PTSD from his 11 years as a Red Cross, National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's Master of Science in General Psychology coursework he is educated in critical incidents involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's handling of critical incidents while in the Federal Air Marshal Service, resulted in the 2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

14.     On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see

the PTSD is coming out". (KA022838, KA023066).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted. Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

**REPLY:** In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take

leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-856, KA023469). The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a, KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96, KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive experience and professional training in PTSD from his 8 years as a United States Federal Air Marshal Flight Medic & National Registered Emergency Medical Technician, Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has extensive experience and professional training in PTSD from his 11 years as a Red Cross,

National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's Master of Science in General Psychology coursework he is educated in critical incidents involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's handling of critical incidents while in the Federal Air Marshal Service, resulted in the 2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

15.     Other meeting attendees laughed in response to Dr. Anderson's comment; however, Dr. Arriola did not find the comment humorous. (KA022838, KA023066).

**RESPONSE:** Disputed, but immaterial. Specifically, Plaintiff does not have personal knowledge regarding whether other meeting attendees laughed "in response to Dr. Anderson's comment. Thus, Cardinal Stritch disputes this proposed fact on the grounds that it is not supported by admissible evidence. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

**REPLY:**     Dr. Arriola has personal knowledge that the other meeting attendees laughed in response to Dr. Anderson's comment based on Dr. Arriola's personal observation and own testimony. (KA022838, KA023066).

20. Dr. Moore's behavior was very unprofessional because deans from other schools and CSU colleagues were present at the meeting. (KA022853-54).

**RESPONSE:** Disputed, but immaterial. This proposed fact is an argument, not a fact supported by admissible evidence. Holman v. Horn, Nos. 04-C-0792 & 05-C-0009, 2005 WL 2319144, at *2 (E.D. Wis. Sept. 22, 2005) (rejecting a set of proposed findings of fact because they were, "in fact, not proposed findings of fact but arguments"), aff'd, 170 F. App'x 1 (7th Cir. 2006).

**REPLY:** Dr. Arriola's is qualified, based on his experience as a Professor and Department Chair, to opine that Dr. Moore's behavior was very unprofessional because deans from other schools and CSU colleagues were present at the meeting. (KA022853-54).

22. Because of his state trooper and counter-terrorism experience, Dr. Arriola perceived Dr. Moore's comment and unwanted physical contact as a physical threat and retaliation for complaining to Dr. Coon. (KA022856, KA022858, KA022860, KA023067).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD or that there was any causal relationship between Plaintiff's "state trooper and counter-terrorism experience" and his alleged reaction to Dr. Moore's alleged comment. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating physicians regarding his diagnoses or prognoses for the truth of the matter asserted. Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May

24, 2013) ("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial").

**REPLY:** In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).

On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-

856, KA023469). The events involving Drs. Anderson and Moore increased Dr.
Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a,
KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96,
KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic
Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway
Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field
Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive
experience and professional training in PTSD from his 8 years as a United States Federal
Air Marshal Flight Medic & National Registered Emergency Medical Technician,
Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field
Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has
extensive experience and professional training in PTSD from his 11 years as a Red Cross,
National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's
Master of Science in General Psychology coursework he is educated in critical incidents
involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he
is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's
handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper
of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a
Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's
handling of critical incidents while in the Federal Air Marshal Service, resulted in the
2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola
Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully

qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

30.     Ms. Sukowaty understood that any reasonable person in Dr. Arriola's position would feel uncomfortable going back to work during an ongoing investigation regarding a complaint against his supervisors. (KA023679).

**RESPONSE:** Disputed, but immaterial. This proposed fact is not supported by the materials cited.

**REPLY:** Ms. Sukowaty testified, as follows:

```
14.  Q  [] Do you think that he had a reasonable
15       concern about going back and reporting to his
16       supervisors while there is an investigation
17       regarding his complaint against those same people?
18   A   So I can understand where he may be concerned in that
19       sense, yes.
20   Q   All right.
21   A   Any reasonable person would be. (KA023679)
```

39.     The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022881-84, KA023073-74, KA023254, KA023274, KA023295-96, KA023326-30).

**RESPONSE:** Disputed, but immaterial. There is no admissible evidence in the record to support Plaintiff's claim that he was ever diagnosed with or treated for PTSD or that there was any causal relationship between Plaintiff's "state trooper and counter-terrorism experience" and his alleged reaction to Dr. Moore's alleged comment. (See ECF Nos. 28, 29, 29-2.) Plaintiff is not a medical expert and is not qualified to diagnose himself with any psychological, psychiatric, or medical condition or to offer an opinion regarding cause of any such condition. See Fed. R. Evid. 701; Fed. R. Evid. 702; Moriconi v. Koester, No. 11-cv-3022, 2015 WL 328590, at *2 (C.D. Ill. Jan. 26, 2015) ("[Plaintiff] may not testify about statements made by his treating

physicians regarding his diagnoses or prognoses for the truth of the matter asserted. Such statements are hearsay."); Barlow v. Riley, No. 12-2058, 2013 WL 2300762, at *2 (C.D. Ill. May 24, 2013)("The Court agrees with Defendant that Plaintiff should be barred from providing opinions or conclusions, including his own opinions, about his medical condition."). Moreover, any testimony regarding what doctors may have said to Plaintiff regarding his alleged diagnosis is inadmissible hearsay that cannot be considered on summary judgment. Fed. R. Evid. 802; Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018) (describing the "key elements of the legal framework for summary judgment evidence" as "the materials presented should be admissible in evidence or point to evidence that would be admissible at trial"); Webster v. Potter, 230 F.R.D. 523, 527 (N.D. Ill. 2005), as supplemented (Sept. 6, 2005).

> **REPLY:** In the summer of 1998, Dr. Arriola was first diagnosed with Acute Post-Traumatic Stress Disorder ("PTSD") due to his employment as a Florida state trooper, federal air marshal, and other counter-terrorism work including top-secret clearance to track al-Qaeda operatives abroad. (KA022822-23; KA022825). From 1998 to 2001, Dr. Arriola received medical treatment from Dr. Elizabeth Love, counseling psychologist, for his PTSD. (KA022826). Dr. Arriola's PTSD occasionally required him to take leaves of absence as a Florida state trooper, including one leave of absence lasting nine days. (KA022826-27, KA022829). Dr. Arriola's PTSD continues to date at varying levels. (KA022823, KA022835, KA023295-96).
>
> On July 31, 2017, Dr. Arriola suffered a PTSD occurrence after Dr. Phillip Anderson, Dean of the College of Business, stated to Dr. Arriola during a group meeting, "I see the PTSD is coming out". (KA022838, KA023066). On September 13, 2017, Dr. Arriola complained to Dr. Coon about Dr. Moore's unprofessional behavior

during a conference meeting earlier that day. (KA022850- 55, KA023066-67). Shortly after his meeting with Dr. Coon, while speaking with a colleague, Dr. Moore walked behind Dr. Arriola, jabbed him the back and said "snitches will get stiches". (KA022855-856, KA023469). The events involving Drs. Anderson and Moore increased Dr. Arriola's anxiety and depression, suicidal thoughts, and PTSD. (KA022835a, KA022881-84, KA22914d, KA023073-74, KA023254, KA023274, KA023295-96, KA023296a, KA023327-30).

Dr. Arriola has extensive experience and professional training in Post-Traumatic Stress Disorder (PTSD) as a first responder during his 15.8 years as a Florida Highway Patrol Advanced Field Training Officer, Critical Incident Counselor, Academy Field Instructor, and First-Responder Instructor. (Arriola Declr. ¶ 8). Dr. Arriola has extensive experience and professional training in PTSD from his 8 years as a United States Federal Air Marshal Flight Medic & National Registered Emergency Medical Technician, Federal Air Marshal Field Training Officer, Critical Incident Counselor, Federal Field Instructor, and EMT First-Responder Instructor. (Arriola Declr. ¶ 9). Dr. Arriola has extensive experience and professional training in PTSD from his 11 years as a Red Cross, National Emergency Response Instructor. (Arriola Declr. ¶ 10). Through Dr. Arriola's Master of Science in General Psychology coursework he is educated in critical incidents involving PTSD. (Arriola Declr. ¶ 11). Through Dr. Arriola's Doctorate in Psychology he is educated in the diagnosis and treatment of PTSD. (Arriola Declr. ¶ 12). Dr. Arriola's handling of critical incidents while on the Florida Highway Patrol, resulted in 8 Trooper of the Month Awards, 32 Commendations, 1997 Instructor of the Year Award, and a Medal of Valor from the Florida Highway Patrol. (Arriola Declr. ¶ 13). Dr. Arriola's

handling of critical incidents while in the Federal Air Marshal Service, resulted in the 2006 National Heroism Award from the U.S. Department of Homeland Security. (Arriola Declr. ¶ 14). Based on Dr. Arriola's training, education and experience, he is fully qualified to understand and articulate facts regarding his PTSD, depression, anxiety, and suicidal ideation. (Arriola Declr. ¶ 15; KA022923c).

42.     CSU never asked permission from Dr. Arriola to substitute his WFMLA leave for sick leave. The decision was instead made solely by Mr. Hoffman and Ms. Sukowaty in the performance of their HR duties. (KA023076, 086-87, 489-90, 564-65).

**RESPONSE:** Disputed, but immaterial. Specifically, the materials in the record demonstrate that CSU asked Dr. Arriola whether he wanted to substitute his WFMLA leave for sick leave, to which Dr. Arriola responded that he did.  (See ECF No. 37 at 11.)

**REPLY:**  Dr. Arriola was the only person legally authorized to substitute his WFMLA leave for his sick leave. Wis. Adm. Code DWD § 225.03(1), states that it is *at the option of the employee* to substitute WFMLA leave for any other paid or unpaid leave which the employee has accrued. In addition, *Wis. Stat.* § 103.10(5)(b), provides that *an employee may substitute* portions of WFMLA leave for paid leave, unpaid leave, or any other type of leave provided by the employer. CSU never asked permission from Dr. Arriola to substitute his WFMLA leave for sick leave. The decision was instead made solely by Mr. Hoffman and Ms. Sukowaty in HR. (PPFOF ¶ 42; KA023076, 086-87, 489-90, 564-65). CSU's application of Dr. Arriola's sick leave and WFMLA leave, concurrently, violated Wisconsin Administrative Code DWD § 225.03(1). Once *an employee* chooses to substitute one type of leave for WFMLA leave under Wis. Admin. Code DWD § 225.03(1), the new leave replaces the WFMLA leave. Dr. Arriola specifically chose sick leave. As a result, the employee [Dr. Arriola] is only using one leave–the substituted leave.

Therefore, only one leave can be reduced. *City of Madison Water Util. v. DWD* (Dane Co. Cir. Ct., 10/10/02.)

45. Had CSU offered him FMLA leave, Dr. Arriola would have applied for and taken FMLA leave. (KA023021-22).

**RESPONSE:** Disputed, but immaterial. This proposed fact is an argument, not a fact supported by admissible evidence. *Holman v. Horn*, Nos. 04-C-0792 & 05-C-0009, 2005 WL 2319144, at *2 (E.D. Wis. Sept. 22, 2005) (rejecting a set of proposed findings of fact because they were, "in fact, not proposed findings of fact but arguments"), aff'd, 170 F. App'x 1 (7th Cir. 2006); *Am. Nat'l Prop. & Cas. Co. v. Graham*, No. 04-C-1185, 2006 WL 1589623, at *1 (E.D. Wis. June 2, 2006) ("Granted, the line between a factual proposition and a legal characterization or conclusion may be nebulous at times. However, if a purported factual proposition cannot be traced to any specific citation in the record and simply stands for the proposition that a given action is violative of the law, the proffered proposition is most likely a legal argument or conclusion. Such advocacy must be left to the argument portion of a brief."). As Cardinal Stritch has explained in its Brief in Support of its Motion for Summary Judgment (ECF No. 32), FMLA leave is not a separate "type" of leave, and Plaintiff was not prejudiced by the fact that Cardinal Stritch did not designate his fourteen weeks of leave as "FMLA" leave.

**REPLY:** CSU's argument that personal leave is no different than FMLA leave, is baseless. A court will analyze whether an employee would have taken FMLA leave had he received the required notice. *Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 90 (2002). "The Supreme Court's decision in *Ragsdale* may leave open the possibility that cases [where an employee is otherwise ineligible] may be pursued, based on the principle of equitable estoppel, where the employer's failure to properly advise the employee of FMLA eligibility/ineligibility is

determined to have interfered with the employee's rights (per § 825.220), and the employee could have taken other action had he/she been properly notified." W.H. Admin. Op. FMLA 2002-5-A (Aug. 6, 2002), Wage & Hour Manual 99:3138, 3139; *see also, Ragsdale* at 91 (noting FMLA requires case-by-case inquiry into whether an employee would have taken leave or restructured leave if employer had given the notice required by the regulation). Dr. Arriola was prejudiced by CSU's denial of federally-protected leave: Dr. Senese, CSU Provost, expected Messrs. Hoffman or Anderson to communicate the conclusion or completion of CSU's investigation to Dr. Arriola. (PPFOF ¶ 36; KA023353, KA023382-83); CSU referred Dr. Moore (the harasser) to the Employee Assistance Program ("EAP") and on-site Faculty Mentor/Counselor Dr. Floyd for remedial training and counseling concerning Hostile Work Employment countermeasures; but, CSU did not refer Dr. Arriola (the victim) to the EAP or have him meet the on-site Faculty Mentor/Counselor, Dr. Floyd, in response to his written request. (KA023023a-d); it is CSU's FMLA procedure to notify an employee of the upcoming exhaustion of his or her 12-week FMLA leave. (KA023624-25). Had Dr. Arriola been notified before his termination that his leave would not be extended, he would have unwillingly returned to work. (KA022939-40); CSU did not notify Dr. Arriola of his discharge until after January 2, 2018, and after his 2018 FMLA eligibility started. (KA022936, KA023022-23, KA023086-87, KA023703-04). As of January 1, 2018, Dr. Arriola was still an employee of CSU and entitled to continue his FMLA leave.

50.     CSU granted Dr. Arriola 12 weeks of leave from September 29, 2017 until December 21, 2017. (KA022943, KA023076, KA023079, KA023081, KA023448, KA023625-26).

**RESPONSE:** Undisputed, subject to the clarification that CSU granted Dr. Arriola leave

beginning on September 14, 2017 and Dr. Arriola elected to utilize his paid sick leave during this period. (ECF No. 34 at 1.)

**REPLY:** Dr. Arriola was the only person legally authorized to substitute his WFMLA leave for his sick leave. Wis. Adm. Code DWD § 225.03(1), states that it is *at the option of the employee* to substitute WFMLA leave for any other paid or unpaid leave which the employee has accrued. In addition, *Wis. Stat.* § 103.10(5)(b), provides that *an employee may substitute* portions of WFMLA leave for paid leave, unpaid leave, or any other type of leave provided by the employer. CSU never asked permission from Dr. Arriola to substitute his WFMLA leave for sick leave. The decision was instead made solely by Mr. Hoffman and Ms. Sukowaty in HR. (PPFOF ¶ 42; KA023076, 086-87, 489-90, 564-65). CSU's application of Dr. Arriola's sick leave and WFMLA leave, concurrently, violated Wisconsin Administrative Code DWD § 225.03(1). Once *an employee* chooses to substitute one type of leave for WFMLA leave under Wis. Admin. Code DWD § 225.03(1), the new leave replaces the WFMLA leave. Dr. Arriola specifically chose sick leave. As a result, the employee [Dr. Arriola] is only using one leave–the substituted leave. Therefore, only one leave can be reduced. *City of Madison Water Util. v. DWD* (Dane Co. Cir. Ct., 10/10/02.)

51.  From September 14, 2017 to September 29, 2017, Dr. Arriola was on paid sick leave. (KA023564).

**RESPONSE:** Undisputed, but immaterial, and subject to the clarification that Dr. Arriola elected to use his accrued, unused sick leave during a leave of absence that would have otherwise been unpaid. (ECF No. 34at 1.)

**REPLY:** Dr. Arriola was the only person legally authorized to substitute his WFMLA leave for his sick leave. Wis. Adm. Code DWD § 225.03(1), states that it is *at the option of the*

*employee* to substitute WFMLA leave for any other paid or unpaid leave which the employee has accrued. In addition, *Wis. Stat.* § 103.10(5)(b), provides that *an employee may substitute* portions of WFMLA leave for paid leave, unpaid leave, or any other type of leave provided by the employer. CSU never asked permission from Dr. Arriola to substitute his WFMLA leave for sick leave. The decision was instead made solely by Mr. Hoffman and Ms. Sukowaty in HR. (PPFOF ¶ 42; KA023076, 086-87, 489-90, 564-65). CSU's application of Dr. Arriola's sick leave and WFMLA leave, concurrently, violated Wisconsin Administrative Code DWD § 225.03(1). Once *an employee* chooses to substitute one type of leave for WFMLA leave under Wis. Admin. Code DWD § 225.03(1), the new leave replaces the WFMLA leave. Dr. Arriola specifically chose sick leave. As a result, the employee [Dr. Arriola] is only using one leave–the substituted leave. Therefore, only one leave can be reduced. *City of Madison Water Util. v. DWD* (Dane Co. Cir. Ct., 10/10/02.)

64.     During the 12-month period preceding September 14, 2017, Dr. Arriola's 2,435.50 hours of service for CSU far exceeded the 1,250-hour threshold required by the FMLA. (KA022808-814, KA022996, KA022998, KA023004).

**RESPONSE:** Disputed, but immaterial, that Dr. Arriola performed "2,435.50 hours of service" for CSU or that Dr. Arriola worked more than 1,250 for CSU in the 12 month period preceding September 14, 2017. Dr. Arriola testified during his deposition that he worked two other jobs at the same time that he worked for Cardinal Stritch and that only 50% of his work efforts were devoted to Cardinal Stritch in this 12 month period. (Arriola Dep. at. 142-144.) In addition, Dr. Arriola was not a full-time employee of Cardinal Stritch during the entire 12 months preceding September 14, 2017, and he took a two-week vacation to Iceland during this 12 month period. (Arriola Dep. at. 172-177.)

**REPLY:** Dr. Jeffrey D. Senese, CSU's Provost, testified that at minimum, a faculty member will spend three hours preparing for every hour of classroom teaching. (KA022808-813, KA023356-57). CSU's published Policies on Adjunct Faculty Work Load and Overload, document that professors are expected to often work outside the classroom or at their homes. (KA022557-58, 60).

66. Had CSU not miscalculated Dr. Arriola's hours of service, CSU would have certified him for FMLA leave. (KA023599).

**RESPONSE:** Disputed, but immaterial. This proposed fact is not supported by the materials cited.

**REPLY:** Sukowaty's email states that Dr. Arriola would have been granted FMLA leave had he qualified. (KA023599).

68. Dr. Arriola would have been eligible for an additional 12 weeks of FMLA leave pursuant to CSU's policy on January 1, 2018. (KA023494-96, KA023513-15).

**RESPONSE:** Disputed. This proposed fact is not supported by admissible evidence. Specifically, the deposition excerpts cited involved a hypothetical question to a lay witness, based on facts not in evidence. See, e.g., Howard v. Rustin, Civil No. 06-00200, 2008 WL 1925102, at *3 (W.D. Pa. April 30, 2008) (hypothetical question to lay witness was not proper).

**REPLY:** In *Howard v. Rustin*, the question was not "rationally based on the perception of the witness". Id. at *3. In the present case, all of the cited testimony was based on facts known to the witness as to whether Dr. Arriola was eligible under CSU's written policy for FMLA leave on an annual rather than rolling basis.

69. On January 2, 2018, after Dr. Arriola notified CSU that he was returning to work on January 22, 2018, CSU retroactively terminated his employment, effective December 21,

2017. (KA022936, KA023022-23, KA023086-87, KA023703-04).

**RESPONSE:** Undisputed that Dr. Arriola's employment was terminated effective December 21, 2017, and that the termination decision was communicated to Dr. Arriola on January 2, 2018. Disputed that Dr. Arriola's employment was terminated "retroactively" on the grounds that this proposed fact is not supported by the materials cited or other admissible evidence. The evidence establishes that the decision to terminate Dr. Arriola's employment was made on or about December 21, 2018, but was not communicated to Dr. Arriola until January, 2, 2018 because of the Christmas holiday. (Sukowaty Dep. at. 95–98.) Further disputed that Dr. Arriola "notified CSU that he was returning to work on January 22, 2018, as he did not do so and the cited references do not support this assertion.

**REPLY:** The termination letter was not mailed until January 2, 2018 therefore the termination was not communicated to Dr. Arriola until a couple of days after January 2, 2018. (KA022936). Dr. Arriola's final release from work was *until* January 22, 2018. (KA023082).

72.     Had Dr. Arriola been notified before his termination that his leave would not be extended, he would have willingly returned to work. (KA022939-40).

**RESPONSE:** Disputed. Plaintiff admitted at his deposition that he was not willing to return to work at CSU, at any time, unless and until the colleague (Dr. Moore) he accused of misconduct had been disciplined to his satisfaction and, further, Plaintiff had been granted "accommodations" by CSU including relocating his and Dr. Moore's offices so they would not have any contact with each other. (See Arriola Dep. at 58–59, 123–27, 211–12.) Moreover, the information that Plaintiff provided to Cardinal Stritch upon the conclusion of his leave of absence through December 21, 2018 indicated that Plaintiff was unable to return to work as of that date. (ECF No. 34-10 at 2.)

**REPLY:** Dr. Arriola testified at depo. pp. 58-59 that he could have returned to work *while* the investigation continued, provided that he and the harasser were not working next to each other *while* it continued. At pages 125-26 of his deposition transcript, Dr. Arriola testified that if he was put back into an office next to the harasser, she would need to understand that she cannot threaten him again. During deposition, Dr. Arriola corrected defense counsel that he was not imposing conditions, but instead requesting accommodation. Dep. pp. 127, 211–12.

73.     Dr. Arriola would have returned had CSU notified him that the investigation was concluded and remedial action had been taken. (KA022939-40).

**RESPONSE:** Disputed. Plaintiff admitted at his deposition that he was not willing to return to work at CSU, at any time, unless and until the colleague (Dr. Moore) he accused of misconduct had been disciplined to his satisfaction and, further, Plaintiff had been granted "accommodations" by CSU including relocating his and Dr. Moore's offices so they would not have any contact with each other. (See Arriola Dep. at 58–59, 123–27, 211–12). Moreover, the information that Plaintiff provided to Cardinal Stritch upon the conclusion of his leave of absence through December 21, 2018 indicated that Plaintiff was unable to return to work as of that date. (ECF No. 34-10at 2)

**REPLY:** Dr. Arriola testified at depo. pp. 58-59 that he could have returned to work *while* the investigation continued, provided that he and the harasser were not working next to each other *while* it continued. At pages 125-26 of his deposition transcript, Dr. Arriola testified that if he was put back into an office next to the harasser, she would need to understand that she cannot threaten him again. During deposition, Dr. Arriola corrected defense counsel that he was not imposing conditions, but instead requesting accommodation. Dep. pp. 127, 211–12.

74.     Had Dr. Arriola been released back to work on December 21, 2017, CSU would

have allowed him to do so and would likely have renewed his contract for another year. (KA023383, KA023485, KA023676-77).

       **RESPONSE:** Disputed. This proposed fact is not supported by admissible evidence. Specifically, the deposition excerpts cited involved a hypothetical question to a lay witness, based on facts not in evidence. See, e.g., Howard v. Rustin, Civil No. 06-00200, 2008 WL 1925102, at *3 (W.D. Pa. April 30, 2008) (hypothetical question to lay witness was not proper).

       **REPLY:** In *Howard v. Rustin*, the question was not "rationally based on the perception of the witness". Id. at *3. In the present case, all of the cited testimony was based on facts known to Dr. Arriola as to whether he would have returned to work and continued his employment at CSU.

                     Dated on November 2, 2018.

                    s/Alan C. Olson
                    Alan C. Olson, Bar Number: 1008953
                    Attorney for Plaintiff
                    Alan C. Olson & Associates, S.C.
                    2880 S. Moorland Rd.
                    New Berlin, WI 53151
                    Telephone: (262) 785-9606
                    Fax: (262) 785-1324
                    Email: AOlson@Employee-Advocates.com