# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DR. KARL ARRIOLA,**

            **Plaintiff,**

v.                                                 **Case No. 18-CV-36**

**CARDINAL STRITCH UNIVERSITY, INC.,**

            **Defendant.**

## DECISION AND ORDER

Plaintiff Dr. Karl Arriola brought this action against defendant Cardinal Stritch University, Inc., alleging that the termination of his employment violated the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq*. Both parties consented to the jurisdiction of a magistrate judge. Cardinal Stritch has moved for summary judgment, and Arriola has moved for partial summary judgment. Both motions have been fully briefed and are ready for resolution.

## FACTS

Cardinal Stritch is a private university in Milwaukee, Wisconsin. (ECF No. 47, ¶ 2.) It hired Arriola as an Adjunct Professor in 2010. (*Id.*, ¶ 3.) Beginning on March 1,

2017, Cardinal Stritch employed Arriola as an Assistant Professor and Chair of the College of Business. (*Id.*, ¶ 4.)

On or about September 14, 2017, Arriola met with Cardinal Stritch Human Resources representative Jacqueline Sukowaty and reported two interactions that had occurred with his co-workers. (ECF No. 47, ¶ 6.) In a written statement provided to Sukowaty, Arriola described the two incidents. (ECF No. 34-1.) The first incident was alleged to have occurred at the end of July during a meeting with three faculty members of the College of Business and Management. During the meeting, the Dean of the College of Business and Management allegedly said to Arriola, "Oh, I see your PTSD coming out." (*Id.* at 1.) Although Arriola admits that he had previously told other faculty members, as well as the dean's wife, that he had been diagnosed with PTSD, he alleged that the remark was unprofessional because it implied that Arriola's PTSD clouded his judgment. The comment "caused Dr. Arriola to feel embarrassed and belittled[.]" (*Id.*)

The second incident allegedly occurred on September 13, 2017—the day before Arriola's meeting with Sukowaty. Arriola alleged that at a faculty development meeting a professor walked up behind a co-worker and twice said, "Say hi." (ECF No. 34-1 at 1.) Arriola claimed that the comment was made "in a very demeaning and bullying tone." (*Id.*) After the meeting was concluded, Arriola reported the incident to the Associate Dean of the College of Business and Management. (*Id.* at 1-2.) Approximately an hour

later, while Arriola was engaged in a conversation with a co-worker, the professor who said, "Say hi," came up behind Arriola, poked him in the back with her finger, and said, "Snitches get stitches." (*Id*. at 2.) After work that day, Arriola went to the Fox Point Police Department and filed an assault and battery complaint against the professor. (*Id*. at 3.)

Arriola called in sick on September 14 and 15, stating that "he feels this is a very Hostile Work Environment and he has been physically ill since yesterday with stress from it." (ECF No. 34-1 at 3.) He claimed that he was worried about retaliation from the dean, assistant dean, and professor at issue and that "his job will be affected from this and how much damage [the professor] will be able to do to sabotage or jeopardize his career." (*Id*.)

Having not returned to work since September 13, on September 19, 2017, Arriola informed Cardinal Stritch, "I will be on leave until my physician determines I can return back to work, as I am under professional treatment." (ECF No. 34-2 at 1.) Arriola provided a letter to Cardinal Stritch from his physician, Dr. Joseph Paukner. (ECF No. 47, ¶ 9.) Other than noting that Arriola had a follow-up appointment scheduled for October 10, 2017, Dr. Paukner's letter stated in its entirety: "This is to certify that Karl E Arriola has been under Joseph L Paukner, MD's care from 9/19/2017 and was off work 9/14/17 thru 10-10-17." (ECF No. 34-2 at 2.)

3

Two days later, on September 21, 2017, Sukowaty notified Arriola that he was eligible for leave under the State of Wisconsin Family and Medical Leave Act through September 28, 2017. (ECF No. 34-3 at 2.) Sukowaty also told Arriola that he was *not* eligible for leave under the federal FMLA, but that Cardinal Stritch would grant Arriola leave under its unpaid personal leave policy. (ECF No. 47, ¶ 12; ECF No. 34-3 at 2.) Sukowaty's letter warned Arriola that "[f]ailure to return to work upon the expiration of the leave of absence will be considered a voluntary resignation of employment." (ECF No. 34-3 at 2.) In a separate email that same day Sukowaty asked Arriola whether he would like to use sick time beginning September 14, 2017. (ECF No. 34-3 at 1.) On September 27, 2017, Arriola emailed Sukowaty that, "From the dates of 09/14 to 09/29 yes, I am in agreement and would like to use my Sick Time to become paid." (ECF No. 34-5 at 1.)

On October 9, 2017, Arriola requested an extension of his leave until November 9, 2017. (ECF No. 47, ¶ 14.) He stated, "I wanted to follow-up with you prior to the October 10th requirement that I have seen my doctor this afternoon, and I am being extended for another 30 days until 11/09 when he wants to see me for another follow-up appointment." (ECF No. 34-6 at 1.) The request was supported by a note from Dr. Paukner, which stated in its entirety: "This is to certify that Karl E Arriola has been under Joseph L Paukner, MD's care from 10/9/2017 and is excused from work on 10/09/2017 to 11/09/2017." (ECF No. 34-6 at 2.) In a letter from Sukowaty to Arriola

dated October 13, 2017, Cardinal Stritch granted Arriola's request that his leave be extended. (ECF No. 47, ¶ 14; ECF No. 34-7 at 2.) Sukowaty's letter again warned Arriola that "[f]ailure to return to work upon the expiration of the leave of absence or refusing an offer of reinstatement for which you are qualified will be considered a voluntary resignation of employment." (ECF No. 34-7 at 2.)

On November 9, 2017, Arriola requested another extension of his leave of absence until December 21, 2017. (ECF No. 47, ¶ 15.) He stated, "I have just come home from seeing my doctor and please find his letter of medical leave being extended to 12/21 as I have another appointment at that time." (ECF No. 34-8 at 1.) It was supported by a note from Dr. Paukner that stated: "This is to certify that Karl E Arriola has been under Joseph L Paukner, MD's care from 11/9/2017 and will be off work for 6 weeks. Pt will f/u with Dr. Paukner in 6 weeks." (*Id.*; ECF No. 34-8 at 3.) In a November 9, 2017 letter from Sukowaty, Cardinal Stritch advised Arriola that it was approving an extension of his leave through December 21, 2017. (ECF No. 47, ¶ 16; ECF No. 34-9 at 2.) Sukowaty's letter to Arriola advised him that, "[a]s of today, all of your accrued but unused sick time has been exhausted." (ECF No. 34-9 at 2.)

On December 21, 2017, Arriola emailed Sukowaty, "As promised, please find the letter of medical leave from my doctor's appointment which occurred today." (ECF No. 34-10 at 1.) Attached was a note from Dr. Paukner which stated: "This is to certify that

Karl E Arriola has been under Joseph L Paukner, MD's care from 12/21/2017 and is unable to return to work until January 22, 2018." (*Id.*; ECF No. 34-10 at 2.)

In a letter from Michael Hoffman, Director of Human Resources, to Arriola dated January 2, 2018, Cardinal Stritch informed Arriola that his most recent request for an extension of his personal leave was not approved and that it was terminating his employment effective December 21, 2017. (ECF No. 34-11.)

Six days later, Arriola filed his complaint in this action. The complaint contains two causes of action: FMLA interference, and FMLA retaliation. (ECF No. 1.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identify" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party fails to establish the existence of an essential element on

which it bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## ANALYSIS

Cardinal Stritch has moved for summary judgment on both of Arriola's claims. Arriola has moved for summary judgment on his FMLA interference claim.

**The FMLA**

The FMLA provides that an eligible employee may take up to 12 weeks of leave during any 12-month period if he is unable to perform the functions of his position because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). An employer is prohibited from interfering with the exercise of or the attempt to exercise any right under the FMLA. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013) (citing 20 U.S.C. § 2615(a)(1)). And it is unlawful for an employer to retaliate against an employee who exercises or attempts to exercise FMLA rights. *Id.* at 781 (citing 29 U.S.C. § 2615(a)(2)).

In moving for summary judgment, Cardinal Stritch does not concede that Arriola was entitled to FMLA leave, arguing that Arriola has no evidence he had a serious health condition in 2017. (*Id*. at 9-13.) However, it contends that Arriola received fourteen weeks of leave—two more than the 12 weeks required under the FMLA. As such, even if it incorrectly concluded that Arriola was not eligible for and entitled to leave under the FMLA, he was not prejudiced. (ECF No. 32 at 6-9.) Finally, it argues that Arriola's FMLA retaliation claim fails because he has presented no evidence that would support an inference that Cardinal Stritch's decision to terminate his employment was motivated by retaliatory animus. (*Id.* at 14-15.)

In response, Arriola begins by arguing that he was eligible to receive FMLA leave, claiming that Cardinal Stritch erred in calculating the number of hours of service he put in with Cardinal Stritch during the 12-month period prior to requesting leave. (ECF No. 53 at 5-6.) He then contends that he was entitled to FMLA leave because he was suffering from several serious health conditions: anxiety and depression, suicidal thoughts, and PTSD. (*Id*. at 7.) He argues that, had he received the FMLA leave to which he was entitled, that would have taken him to the end of 2017, at which point he would have been entitled to another 12 weeks of FMLA leave under Cardinal Stritch's leave policy. (ECF No. 53 at 25.) And he contends that a disputed issue of material fact exists as to his retaliation claim. (*Id.* at 21.)

For the same reasons he disputes that Cardinal Stritch is entitled to summary judgment on his FMLA interference claim, Arriola contends he is entitled to summary judgment on that claim. (ECF No. 37.)

**1. Arriola's FMLA Interference claim**

To prevail on an FMLA interference claim, a plaintiff must prove, among other things, that "his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). If Arriola was eligible for FMLA leave, he would have been entitled to 12 weeks of leave. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 223 (7th Cir. 2015) (citing 29 U.S.C. § 2612(a)(1)). It is undisputed that Cardinal Stritch did not terminate Arriola's employment until 14 weeks after his last day of work. Thus, according to Cardinal Stritch, even if Arriola could show that he was eligible for FMLA leave and that Cardinal Stritch failed to properly designate his leave, he cannot prove he was prejudiced by Cardinal Stritch's alleged interference with his right to leave; he received all the leave to which he was entitled. (ECF No. 32 at 7.) *See Ragsdale v. Wolverine World Wide, Ind.*, 535 U.S. 81, 89 (2002) ("§ 2617 provides no relief unless the employee has been prejudiced by the violation").

The FMLA entitles an eligible employee "to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a). However, in response to Cardinal Stritch's motion, Arriola argues that, as of January 1, 2018, he became eligible for an additional 12 weeks of FMLA leave because Cardinal Stritch permits 12 weeks of leave

9

*per calendar year.* (*See* ECF No. 34-13 ("An eligible employee under the Federal FMLA may in a calendar year take up to twelve (12) weeks of unpaid leave for any combination of family, medical or qualifying exigency leave[.]").)

In an effort to demonstrate that he was entitled to leave through 2017, Arriola argues that, because he used accrued sick leave for the first two weeks he did not work, his FMLA leave would not have started until September 29, 2017. Twelve weeks from that date is December 22, 2017. Because Cardinal Stritch was closed from December 22, 2017, through January 2, 2017, that period should not be counted as leave. (ECF No. 37 at 11-12 (citing 29 C.F.R. § 825.200(h)); *see also* ECF Nos. 53 at 19; 54 at 2.) And beginning in January 2018, 12 new weeks of FMLA leave kicked in.

Arriola fails to support the contention that Cardinal Stritch was closed from December 22, 2017 through January 2, 2018, with any citation to the record.[1] Therefore, the court is not presented with evidence from which a finder of fact could accept this proposition as true. Moreover, even if classes were not in session during this period, that does not necessarily mean that faculty members were not required to work--for

---

[1] The court notes that, attached to a Declaration of Alan Olson, one of the plaintiff's attorneys, is a document Olson describes as "a 2017 calendar depicting Dr. Arriola's sick leave, FMLA eligible leave, and CSU's holiday closure." (ECF No. 39.) The exhibit is merely a calendar of 2017 with certain dates in different colors intended to correspond to, for example, Arriola's sick leave, Arriola's FMLA leave, and Cardinal Stritch's holiday break. No information is provided as to the source of the exhibit; it appears it is simply a calendar created by counsel outlining his view as to how relevant periods should be categorized. It certainly is not evidence that Cardinal Stritch was closed the last ten days of 2017. Moreover, the court notes that only December 22 and 23 are highlighted in the red color that the exhibit identifies as corresponding to "CSU Holiday Break." The remainder of 2017 is highlighted in orange, a color not identified in the exhibit's explanatory key.

example, grading exams or preparing for the upcoming term, *cf.* 29 C.F.R. § 825.110(c)(3) (noting that educators "often work outside the classroom or at their homes").

As for Arriola's contention that his FMLA leave would not have begun until September 29, 2017, i.e., after he exhausted his sick leave, Arriola again does not offer any support. Instead, he offers arguments only as to how, in his view, Cardinal Stritch allegedly violated Wisconsin's Family and Medical Leave Act (WFMLA) by substituting his sick leave allegedly without his consent. (ECF Nos. 37 at 10-12; 53 at 3, 18-19; 54 at 5.) But Arriola is not suing under the WFMLA. And under the federal FMLA, "an employer may require the employee[] to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under" the FMLA. 29 U.S.C. § 2612(d)(2).

Cardinal Stritch's termination of Arriola's employment was effective December 21, 2017. As a result, Arriola received 14 weeks of leave. Arriola has failed to demonstrate that he would have been entitled to FMLA leave beyond December 7, 2017—12 weeks from September 14, 2017, his first day of leave. Even if Arriola could show that he was entitled to leave into 2018 and that Cardinal Stritch had a policy of granting 12 weeks of leave per calendar year, he still would not be entitled to relief *under the FMLA*. An employer may have leave policies that are more generous than the minimums required under the FMLA. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002) (quoting 29 U.S.C. § 2653)). But if the employer violates its own policies and

fails to provide an employee with that more generous leave, that does give the employee a claim under the FMLA. *See id.; see also Holmes v. E. Spire Communs., Inc.*, 135 F. Supp. 2d 657, 667 (D. Md. 2001).

Arriola offers a final argument in an attempt to show he was prejudiced by Cardinal Stritch's failure to designate his leave as FMLA leave. He argues that, if his leave had been designated as FMLA leave, under Cardinal Stritch's policies he would have received notice that his leave was ending. (ECF No. 37 at 8-9.) He did not receive any such notice. Rather, his employment was terminated when his fourth request for an extension of leave was denied; he was deemed terminated as of the date of the expiration of his authorized leave, December 21, 2017. Arriola argues he "would have returned to work earlier had he known he would be discharged." (ECF No. 53 at 4.)

As a preliminary matter, the court notes that Cardinal Stritch *did* inform Arriola that "[f]ailure to return to work on the expiration of the leave of absence will be considered a voluntary resignation of employment." (ECF No. 34-3 at 2; *see also* ECF No. 34-7 at 2.) More importantly, Arriola's contention that he could have returned to work earlier is contradicted by the fact that on December 21, 2017, he represented to Cardinal Stritch that he was *unable* to return to work as of that date. Specifically, Arriola presented Cardinal Stritch with his physician's certification that Arriola "is unable to return to work until January 22, 2018." (ECF No. 47, ¶ 19.) He had previously informed Cardinal Stritch that he "will be on leave until my physician determines I can return

back to work." (ECF No. 34-2 at 1.) No reasonable finder of fact could credit his present self-serving assertion that he would have returned to work over his contemporaneous claim that he was unable to work.[2]

Cardinal Stritch granted Arriola at least 12 weeks of leave. It terminated his employment only after learning that, having afforded him all the leave to which he was entitled, he would not be able to return to work until at least January 22, 2018. The fact that Cardinal Stritch initially failed to characterize his absence as FMLA leave made no difference. Consequently, terminating Arriola did not interfere with his rights under the FMLA. *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 779-80 (7th Cir. 2012).

Given this conclusion, the court finds it unnecessary to determine whether genuine disputes of material fact exist as to whether Arriola was either eligible or entitled to receive FMLA leave, including whether he has evidence that he suffered from a serious health condition. Even if Arriola was both eligible and entitled to receive FMLA leave, he would have received nothing more than he did. As such, Cardinal Stritch is entitled to summary judgment on Arriola's FMLA interference claim.

---

[2] Moreover, if Arriola falsely claimed on December 21, 2017, that he was unable to work, it calls into question the veracity of his prior claims. "An employee who fraudulently obtains FMLA leave from an employer is not protected by FMLA's job restoration or maintenance of health benefits provisions." 29 C.F.R. § 825.216(d).

## 2. Arriola's FMLA Retaliation claim

In his second claim for relief, Arriola alleges that Cardinal Stritch terminated his employment "on account of his activity protected by the FMLA." (ECF No. 1, ¶ 26.)

"The FMLA provides that it is unlawful for an employer 'to discharge or in any manner discriminate against' any employee for opposing any practice the FMLA makes unlawful." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting 29 U.S.C. § 2615(a)(2)). "The difference between a retaliation and interference theory is that the first requires proof of discriminatory or retaliatory intent while an interference theory requires only proof that the employer denied the employee his or her entitlements under the Act." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (brackets and quotation marks omitted).

In moving for summary judgment, Cardinal Stritch contends that Arriola's retaliation claim "is simply a rehashing of his FMLA interference claim, which fails for the reasons stated above." (ECF No. 32 at 14.) Moreover, it contends that Arriola's retaliation claim "fails as a matter of law because there is no evidence from which a reasonable jury could find that Cardinal Stritch's decision to terminate [Arriola's] employment (or any of Cardinal Stritch's other actions with respect to [Arriola]) was in any way causally related to any activity protected under the FMLA." (*Id.*)

In response, Arriola argues that a causal connection exists between his leave and his termination. That connection, he contends, is found in the temporal connection

between the December 21, 2017 date on which he informed Cardinal Stritch of his intent to take leave until January 22, 2018, and the date on which he was terminated, January 2, 2018. (ECF No. 53 at 26.) He also argues that Cardinal Stritch's "silence throughout Dr. Arriola's entire leave regarding the conclusion of his internal complaint further evidences [Cardinal Stritch's] retaliatory intent." (*Id.*) He states that he "would have returned to work had [Cardinal Stritch] made accommodations relating to Drs. Arriola and [the other professor's] interactions." (*Id.*)

"To succeed on a retaliation claim, the plaintiff does not need to prove that retaliation was the only reason for [his] termination; []he may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (quotation marks omitted). A plaintiff may rely on either the direct or indirect methods of proof to prove he suffered retaliation as a result of exercising his rights under the FMLA. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). The direct method requires proof that the employer intended to punish him for requesting or taking FMLA leave. *Id.* The indirect method requires the employee to prove he was performing his job satisfactorily but yet was treated differently than similarly situated employees who did not request or take FMLA leave. *Id.* Arriola attempts to proceed under the direct method. (ECF No. 53 at 22.)

As to Arriola's first argument, obviously there was a temporal connection between Cardinal Stritch learning that Arriola continued to be unable to work (and thus sought additional leave) and its decision to terminate his employment. But that is to be expected whenever an employer finds it necessary to terminate an employee after that employee has exhausted his available leave but is still unable to return to work. Indeed, it would be odd for much time to elapse between the two events. This temporal connection alone cannot create a triable issue of fact lest every employer is to face trial whenever it fails to permanently hold a job for an employee following FMLA leave.

By December 21, 2017, Arriola had not worked since September 13, 2017. He had submitted three notes from Dr. Paukner, each stating only that Arriola would be off work for a period of time. Upon receiving each of those notes, Cardinal Stritch did not terminate Arriola's employment or in any other way retaliate against him. Only when he submitted a fourth note from Dr. Paukner on December 21, stating that Arriola was still unable to work for at least another 30 days, did Cardinal Stritch decide to terminate Arriola's employment. By that date, Arriola had received more leave than Cardinal Stritch was required to give him under the FMLA. No reasonable jury could conclude that the fact that the decision to terminate followed shortly after learning that the employee continued to be unable to return to work evidenced retaliatory intent.

Arriola also contends that Cardinal Stritch's

> silence throughout Dr. Arriola's entire leave regarding the conclusion his internal complaint further evidences [Cardinal Stritch]'s retaliatory intent. [Cardinal Stritch] management was aware that Dr. Arriola would have returned to work had [Cardinal Stritch] made accommodations relating to Drs. Arriola and [the other professor's] interactions. Nonetheless, it strung him along on an unpaid personal leave and kept him in the dark about the investigation until it found a convenient time [to] terminate his employment.

(ECF No. 53 at 26.) The statement that is crucial to his argument—that Cardinal Stritch was aware Arriola would have returned to work had it made certain unspecified accommodations—is unsupported by any citation to the record.

The proposed finding of fact that the court has identified as most closely supporting this assertion is one in which Arriola asserts, and Cardinal Stritch acknowledges, that as part of his initial report on September 14, 2017, "Arriola informed Ms. Sukowaty that he could not return to the current work environment unless measures were taken to ensure the behavior did not continue." (ECF No. 51, ¶ 29.) But this statement does not say that Cardinal Stritch knew that Arriola's repeated requests for additional leave were because, as Arriola now alleges, he was waiting to hear what Cardinal Stritch might do about his complaints. Thus, the court looks to the evidentiary basis for this proposed finding of fact—Arriola's deposition, where he recounts his interaction with Sukowaty. He testified:

> Prior to the meeting ended, I told -- and I was very stern. I told Jackie, "Jackie, I cannot work in this environment." I cannot go back to work, because, one, I whistle-blew. Two, I was retaliated against. I cannot

introduce myself in that environment and be potentially exposed with that behavior, knowing it was addressed yesterday, and nothing has been done today. So it's reasonably unfair for myself to allow me to be exposed to that. …

So by understanding all of this, I was not prepared to go back into that environment. I says, "I cannot do it unless something is done, and I have -- I have rest assured and resolve that it was fairly completed appropriately, that actions were going to be implemented in place to make sure that this behavior does not continue.

Q: Okay. So you determined on September 14th that you were not going to return to work until the investigation had been completed and actions taken as a result of that investigation; is that right, sir?

A: I didn't term -- I didn't determine that. We collectively, with Jakowaty [sic], with- the security guard, they--they agreed and assured me that I wouldn't want to go to work as well. I says, "I can't go to work, I need to take time off."

(ECF No. 49-2 at 6-7.)

In short, Arriola never told Sukowaty that he would be taking leave until Cardinal Stritch informed him of the results of its investigation. In fact, when asked whether he had decided on September 14 that he would not be able to return to work until Cardinal Stritch had completed its investigation, he said he had *not* decided.

From Cardinal Stritch's perspective, it was Arriola's physician, not its alleged inaction, that was dictating his return. Rather than stating that his return was dependent upon Cardinal Stritch providing him with certain information, Arriola explicitly informed Cardinal Stritch, "I will be on leave until my physician determines I can return back to work …." (ECF No. 34-3 at 1.) He made other statements

communicating to Cardinal Stritch that his return was dependent upon his physician's opinion regarding his health. (ECF No. 34-6 at 1 ("I have seen my doctor this afternoon, and I am being extended for another 30 days…"); ECF No. 34-8 at 1 ("I have just come home from seeing my doctor and please find his letter of medical leave being extended to 12/21 …")). In the absence of evidence that Cardinal Stritch knew that Arriola was waiting for information as to how Cardinal Stritch planned to address the relationship between Arriola and the other professor, no reasonable finder of fact could conclude that Cardinal Stritch acted with discriminatory or retaliatory intent by not updating him as to what, if anything, it had decided to do.

In sum, Arriola has failed to present evidence from which a reasonable finder of fact could conclude that Cardinal Stritch terminated Arriola to punish him for using his FMLA leave. Cardinal Stritch terminated Arriola's employment not because he *used* his FMLA leave but because he had *used up* that leave but still could not work. The former is unlawful retaliation; the latter is not.

**IT IS THEREFORE ORDERED** that Karl Arriola's motion for partial summary judgment (ECF No. 36) is **denied**.

**IT IS FURTHER ORDERED** that Cardinal Stritch's motion for summary judgment (ECF No. 31) is **granted**. Arriola's complaint and this action are **dismissed**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Cardinal Stritch's motion to exclude Arriola's expert (ECF No. 27) is **dismissed as moot**.

Dated at Milwaukee, Wisconsin this 28th day of February, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge